1
2
3
4
5
6
7

8                  **UNITED STATES DISTRICT COURT**

9                 **SOUTHERN DISTRICT OF CALIFORNIA**

10   LEITHA McMINN,                          CASE NO. 14cv0272 DMS (DHB)

11                          Plaintiff,        **ORDER (1) DENYING
                                             PLAINTIFF'S MOTION FOR**
12          vs.                              **SUMMARY JUDGMENT AND (2)
                                             GRANTING DEFENDANT'S**
13   MIDLAND CREDIT                          **MOTION FOR SUMMARY
     MANAGEMENT, INC., a Kansas              JUDGMENT**
14   corporation,

15                          Defendant.

16

17          This case comes before the Court on the parties' cross-motions for summary

18   judgment.  Both parties seek judgment in their favor on Plaintiff's claim for violation

19   of the Fair Debt Collection Practices Act ("FDCPA").  The parties have filed opposition

20   and reply briefs to each respective motion.  For the reasons discussed below, the Court

21   denies Plaintiff's motion and grants Defendant's motion.

22                                  **I.**

23                             **BACKGROUND**

24          At some time prior to 2011, Plaintiff Leitha McMinn obtained a credit card from

25   Chase.  (Compl. ¶ 13.)  She incurred charges on the card, and later defaulted on the

26   debt.  Subsequently, Midland Funding, LLC ("Midland Funding") purchased a debt

27   portfolio from Chase, which included McMinn's unpaid credit card debt.

28   / / /

Prior to the purchase of Plaintiff's debt, Midland Funding entered into a Servicing Agreement with Defendant Midland Credit Management, Inc.  Defendant owns 100% of the shares of Midland Portfolio Services, Inc., which owns 100% of Midland Funding.  (Decl. of Stelios Harris in Resp. to Pl.'s Supp. Evid. Objections ¶ 4.)[1]  Pursuant to the Servicing Agreement, Defendant was responsible for servicing and collecting debt owned by Midland Funding.

Defendant serviced Plaintiff's debt pursuant to the Servicing Agreement.  (Notice of Lodgment in Supp. of Def.'s Mot., Ex. C.)  Under the Agreement, Defendant is granted broad powers to act on behalf of Midland Funding including "full power and authority ... to do or cause to be done any and all things in connection with" the servicing and collection of debt.  (*Id.*, Art. II, § 2.1.)  Defendant is obligated to "undertake commercially reasonable efforts to collect" such debt through "legal actions" and "other customary collection activities and practices." (*Id.* § 2.3.)  Further, Defendant is "deemed to have been assigned rights in and to the Accounts and the debt underlying the Accounts by [Midland Funding] to the extent necessary to enable [Defendant] to pursue collection efforts ..., and is authorized to commence, in the name of [Midland Funding] or [Defendant], legal proceedings to collect" such debt.  (*Id.*)

Pursuant to this contractual relationship, on February 21, 2013, Midland Funding, through Defendant's in-house attorneys, filed a complaint against Plaintiff for account stated in Sonoma County Superior Court.  (Decl. of Jay R. Dove in Supp. of Pl.'s Mot. for Summ. J., Ex. D.)  While that case was pending, Defendant, through one of its non-attorney group managers, sent Plaintiff a letter on March 21, 2013, and attempted "to resolve the matter voluntarily."  (Decl. of Leitha McMinn in Supp. of Pl.'s Mot. for

---

[1] In a previous declaration, Mr. Harris stated Defendant was "a corporate affiliate of Midland Funding and its sole member."  (Decl. of Stelios Harris in Supp. of Def.'s Mot. for Summ. J. ("Harris Decl. 1") ¶ 3.)  Plaintiff filed supplemental objections to this portion of Mr. Harris's declaration, accompanied by evidence that disputed his characterization of the relationship between Defendant and Midland Funding. Defendant filed an objection and response to Plaintiff's supplemental objections, along with another declaration from Mr. Harris that corrects his previous declaration. Ultimately, however, the precise nature of the corporate relationship between Defendant and Midland Funding is immaterial to the resolution of the present motions.

Summ. J. ("McMinn Decl."), Ex. A.)  Absent resolution, Defendant informed Plaintiff it intended "to seek a judgment" against her through the foregoing lawsuit.  (*Id.*)  The lawsuit proceeded until the day of trial, July 25, 2014, at which time it was dismissed without prejudice.  (Mem. of P. & A. in Supp. of Pl.'s Mot. at 3 n.3.)   After the state court complaint was filed and before it was dismissed, Plaintiff filed the present action against Defendant in this Court.  In her Complaint, Plaintiff alleges one claim for violation of the FDCPA.  This claim is based on the assertion that Defendant engaged in the unlawful practice of law by filing the state court complaint and mailing the March 21, 2013 letter to Plaintiff.

## II.

## DISCUSSION

The parties raise two primary issues in their competing motions for summary judgment.  First, Defendant argues Plaintiff lacks standing to pursue her claim.  Second, the parties dispute whether Defendant violated the FDCPA.

**A.      Summary Judgment**

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party has the initial burden of demonstrating that summary judgment is proper.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  The moving party must identify the pleadings, depositions, affidavits, or other evidence that it "believes demonstrates the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth."  *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

The burden then shifts to the opposing party to show that summary judgment is not appropriate.  *Celotex*, 477 U.S. at 324.  The opposing party's evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  However, to avoid summary judgment, the

1   opposing party cannot rest solely on conclusory allegations.  *Berg v. Kincheloe*, 794
2   F.2d 457, 459 (9th Cir. 1986).  Instead, it must designate specific facts showing there
3   is a genuine issue for trial.  *Id.  See also Butler v. San Diego District Attorney's Office*,
4   370 F.3d 956, 958 (9th Cir. 2004) (stating if defendant produces enough evidence to
5   require plaintiff to go beyond pleadings, plaintiff must counter by producing evidence
6   of his own).  More than a "metaphysical doubt" is required to establish a genuine issue
7   of material fact.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574,
8   586 (1986).

## B.      Standing

10      In its motion for summary judgment, Defendant raises the issue of Article III
11  standing, and argues Plaintiff lacks Article III standing because she did not suffer an
12  injury.  However, Plaintiff clearly asserts that Defendant violated her right "not to be
13  the target of misleading debt collection communications."  *Tourgeman v. Collins*
14  *Financial Services, Inc.*, 755 F.3d 1109, 1116 (9th Cir. 2014).  Specifically, Plaintiff
15  asserts Defendant violated 15 U.S.C. § 1692e(5) of the FDCPA, which prohibits debt
16  collectors from making threats "to take any action that cannot legally be taken or that
17  is not intended to be taken."  15 U.S.C. § 1692e(5).  "The alleged violation of this
18  statutory right ... constitutes a cognizable injury under Article III."  *Tourgeman*, 755
19  F.3d at 1116.  Accordingly, the Court rejects Defendant's argument that Plaintiff lacks
20  Article III standing to pursue this case.

## C.      FDCPA

22      Plaintiff asserts Defendant violated § 1692e of the FDCPA, which makes it
23  unlawful for debt collectors to "use any false, deceptive, or misleading representation
24  or means in connection with the collection of any debt."[2]  Subdivision (5) of § 1692e
25  prohibits a debt collector from "threat[ening] to take any action that cannot legally be
26  taken or that is not intended to be taken."  15 U.S.C. § 1692e(5).  Plaintiff contends

___

27  
28      [2]  The parties agree the debt at issue in this case is a consumer debt under the FDCPA, and that Defendant is a "debt collector" as defined by the statute.  (Def.'s Opp'n to Pl.'s Mot. at 3 n.2.)

1  Defendant took action that it could not legally take when it filed the state court

2  complaint and mailed the March 21 letter.

3        1.       The State Court Action

4        Plaintiff alleges that in an effort to collect on her debt, Defendant engaged in the

5  unauthorized practice of law by filing the state court complaint.  Specifically, Plaintiff

6  contends that because Defendant's in-house attorneys filed the state court complaint on

7  behalf of Midland Funding, Defendant itself engaged in the practice of law.  Because

8  Defendant is not licensed to practice law in California, Plaintiff alleges its conduct was

9  illegal, and therefore a violation of the FDCPA.

10        In support of this assertion, Plaintiff relies primarily on *People v. Merchants*

11  *Protective Corp.*, 189 Cal. 531 (1922), and subsequent cases, for the proposition that

12  a corporation may not "employ competent attorneys to practice for it."  *People v.*

13  *California Protective Corp.*, 76 Cal. App. 354 (1926).  Plaintiff claims Defendant

14  "stepped over the line into the practice of law when its employees filed suit against

15  [Plaintiff] under Midland Funding's name." (Mem. of P. & A. in Supp. of Pl.'s Mot.

16  at 4.)  This argument misses the mark for several reasons.

17        First, nearly a century has passed since *Merchants Protective* and *California*

18  *Protective* were decided.  In that time, the law has changed considerably.  Now, "[i]t is

19  simply no longer true that lawyers may not practice in a corporate framework." *Gafcon,*

20  *Inc. v. Ponsor & Assoc.*, 98 Cal. App. 4th 1388, 1410 (2002).  Indeed, California law

21  now specifically allows for the establishment of law corporations, which when properly

22  registered, are "entitled to practice law."  Cal. Bus. & Prof. Code § 6160.

23        Second, *Merchants Protective* and *California Protective* never prohibited a

24  corporation from employing attorneys to act on its behalf.  The now outdated rule of

25  those cases, that a corporation could not practice law, did "not preclude a corporation

26  / / /

27  from employing attorneys in any litigation in which it had a financial interest." *Estate*

28  *of Miller*, 5 Cal. 2d 588, 597 (1936).

Third, subsequent cases have allowed corporations to represent not only their own interests, but third party interests, as well. *See Frye v. Tenderloin Housing Clinic, Inc.*, 38 Cal. 4th 23, 38-39 (2006) (affirming for profit and nonprofit corporations' ability to represent third party clients). Finally, subsequent cases have held that in-house attorneys of an insurance company can ethically represent the company's insured without the company being engaged in the practice of law. *See Gafcon*, 98 Cal. App. 4th at 1396-97.

All of these cases demonstrate the folly in Plaintiff's argument. As in *Gafcon*, there is no evidence in this case that Defendant was practicing law when it had its in-house counsel represent Midland Funding in the state court case. Defendant presented undisputed evidence that its in-house attorneys discharged their obligations to Midland Funding without interference from Defendant. (Def.'s Opp'n to Pl.'s Mot. at 5) (citing Harris Decl. 1 ¶ 9.)[3] That evidence alone demonstrates Defendant did not engage in the practice of law. *See Gafcon*, 98 Cal. App. 4th at 1415 (undisputed evidence showed insurer did not control its attorney's professional judgment in rendering services to insured and thus, insurer did not engage in practice of law).

Furthermore, although the relationship between Defendant, its in-house counsel and Midland Funding is not one of insurer-attorney-insured, the analogy to that well established "tripartite relationship" is apt. In *Gafcon*, where that relationship was under attack – the plaintiff argued the insurance company's employment of attorneys to represent its insureds constituted the unlawful practice of law by the insurance company itself – the court rejected the contention that the insurer acted improperly, finding that if "an insurance company has a direct pecuniary interest in the underlying third party action against its insured[,] ... it is entitled to have counsel represent its own interests

---

[3] Plaintiff objects to this evidence as irrelevant. (Pl.'s Objs. to Evid. Offered in Supp. of Def.'s Mot. at 2.) The Court overrules this objection. Whether Defendant directed or controlled counsel's conduct is relevant to the question of whether Defendant was engaged in the practice of law. *See Gafcon*, 98 Cal. App. 4th at 1415 (citing lack of evidence that "Travelers directed or controlled [attorney] Ponsor's representation in any way" as support for conclusion that Travelers was not practicing law).

14cv0272

as well as those of its insured, as long as their interests are aligned." *Id.* at 1414.  So, too, here.  There is no dispute that Defendant had a financial interest in the state court case.  Pursuant to the Servicing Agreement, both Defendant and Midland Funding had an interest in collecting Plaintiff's debt.  Their interests were completely aligned, so much that Defendant was "assigned rights" to the debt, and was authorized to use its or Midland Funding's name in the collection efforts.  (Notice of Lodgment in Supp. of Def.'s Mot. Ex. C Art. II, § 2.3.)  As Defendant had a direct pecuniary interest in the state court litigation, it was free to have its attorneys represent its own interests as well as those of Midland Funding.  Defendant had its attorneys pursue the debt on behalf of Midland Funding, and without interference from Defendant.  There is nothing unauthorized or unlawful about that conduct.

Finally, absent a conflict of interest, an attorney may have fiduciary obligations to both a company-employer and third party client.  *See Gafcon*, 98 Cal. App.4th at 1406 (citing *National Union Fire Ins. Co. v. Stites Prof. Law Corp.*, 235 Cal. App. 3d 1718, 1727 (1991)) ("So long as the interests of the insurer and the insured coincide, they are both the clients of the defense attorney and the defense attorney's fiduciary duty runs to both the insurer and the insured").  Although none of the evolutions from *Merchants Protective* and *California Protective* "permit lawyers representing corporate entities or performing legal services for third parties to violate or disregard obligations otherwise imposed by the Rules of Professional Conduct[,]" *id.* at 1411-12, the relationship at issue here between Defendant and Midland Funding did not cause Defendant's lawyers to violate or disregard their fiduciary and ethical obligations to either Defendant or Midland Funding.  Defendant's interests are indisputably interwoven with those of Midland Funding in collecting the debt.  The evidence reveals no conflict of interest, and thus, both Defendant and Midland Funding could be represented by Defendant's in-house counsel – whose fiduciary duty would run to both.  Such representation is permitted under the law.  Moreover, such representation does not

result in the employer being deemed to have practiced law where it does not control or direct its attorney's representation in the matter.

In light of the above, Defendant did not engage in the unauthorized practice of law, and thus there was no violation of the FDCPA by the filing of the state court complaint.

2.    The March 21, 2013 Letter

It is undisputed that Defendant's non-attorney agent sent the March 21, 2013 letter to Plaintiff. The first point of contention is whether that action constitutes the practice of law. The letter stated, in pertinent part:

> We have been notified that you have been served with a copy of a lawsuit commenced against you on the account referenced above. We are contacting you in an effort to resolve the matter voluntarily. If we are not able to resolve the matter voluntarily, we intend to seek a judgment against you, which may then be enforced in accordance with applicable state law. [¶] ... [W]e need to hear from you or the lawsuit will proceed.

(McMinn Decl., Ex. A.) The parties agree the letter is an attempt to negotiate. Plaintiff argues that attempt constitutes the practice of law, while Defendant disagrees.

In some circumstances, an attempt to negotiate pending litigation is considered the practice of law. *See Morgan v. State Bar*, 51 Cal. 3d 598, 603-04 (1990) (concluding "that engaging in negotiations with opposing counsel concerning settlement and agreeing that the case should be continued until a later date, constitutes the practice of law.") Parties to litigation, however, are always free to communicate "with respect to the subject matter of the representation, and nothing in [California Rule of Professional Conduct 2-100] prevents a member [of the bar] from advising the client that such communication can be made." Cal. R. Prof. Conduct 2-100 Discussion. In this case, Defendant, through one of its non-attorney managers, sent the March 21 letter directly to Plaintiff "in an effort to resolve the matter voluntarily." (McMinn Decl., Ex. A.) It is unclear whether "the matter" refers to the unpaid debt or the then-pending case, but even assuming it referred to the case, that does not mean the letter involved the practice of law. As indicated in the Discussion following California Rule of

Professional Conduct 2-100, parties to litigation are free to discuss possible resolution of the litigation among themselves and without the assistance or involvement of their counsel.

Under the Servicing Agreement, Defendant had the absolute authority to act on behalf of, and to speak for, Midland Funding in the collection efforts of the subject debt.  (Notice of Lodgment in Supp. of Def.'s Mot., Ex. C Art. II, § 2.1 (providing Defendant "full power and authority ... to do or cause to be done any and all things in connection with" the servicing and collection of debt owned by Midland Funding).  Clearly, Defendant spoke for Midland Funding when it sent the letter.  In that capacity, it effectively was a party to the litigation.  Thus, Defendant's March 21 letter neither constituted the practice of law nor violated the FDCPA.

**D.    Other Issues**

Although the Complaint references other interactions between Plaintiff and Defendant, Plaintiff's motion for summary judgment focused exclusively on the two theories of liability addressed above: the filing of the state court complaint and the March 21, 2013 letter.  Defendant, in its motion for summary judgment, addressed those two issues, as well as another issue surrounding alleged "settlement discussions" between Plaintiff and another non-attorney employee of Defendant, Teresa Trice.  Plaintiff alleged in her Complaint that those discussions, like the March 21 letter, constituted the unauthorized practice of law by Defendant.  (*See* Pl.'s Opp'n to Def.'s Mot. at 10) (citing Complaint ¶ 35.)   Defendant disputes there were settlement discussions, and correctly points out a non-moving party "may not rely on the mere allegations in the pleadings in order to preclude summary judgment." *T. W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  Plaintiff's reference to this conversation therefore does not raise a triable question of fact.  The

/ / /

/ / /

14cv0272

1    argument also fails for the same reasons set forth with respect to the March 21, 2013

2    letter.[4]

3          Plaintiff also raised several new theories in her opposition brief in an attempt to

4    create triable questions of fact.  (Pl.'s Opp'n to Def.'s Mot. at 6:14-7:4 (fee splitting);

5    12:18-13:4 (Tanya Johnson testimony); 15:10-16, 15:24-27 ("misleading" reference to

6    in-house counsel in state court complaint); and 16:2-17:2 (Bus. & Prof. Code §

7    6077.5)).  While these theories have no merit and fail to raise triable questions of fact,

8    the Court declines to further address these matters as they were not alleged the

9    Complaint and have been waived.  *See Wasco Products, Inc. v. Southwall Technologies,*

10   *Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) (inadequate pleadings may not be fleshed out at

11   summary judgment stage).

12                                    **III.**

13                                **CONCLUSION**

14         There was nothing unlawful about Defendant's in-house attorneys filing the state

15   court case on behalf of Midland Funding, or Defendant's mailing of the March 21, 2013

16   letter to Plaintiff.  In the absence of any unlawful conduct, Defendant did not violate the

17   FDCPA.  Accordingly, the Court denies Plaintiff's motion for summary judgment and

18   grants Defendant's motion for summary judgment.

19         **IT IS SO ORDERED**.

20   DATED:  March 2, 2015

21   _____

22                                    HON. DANA M. SABRAW
                                      United States District Judge
23

24

25

26

_____

27        [4]  Plaintiff also argued that a letter dated April 3, 2013 from Defendant to
     Plaintiff constituted an improper attempt to settle the state court lawsuit.  (*See* Pl.'s
28   Opp'n to Def.'s Mot. at 11-12.)  This argument repeats those made with respect to the
     March 21, 2013 letter and fails for the same reasons.